UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRIS POLIZZI** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2683** |
| **NATHAN CAIN, WARDEN** | **SECTION "J"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.  Factual Background

The petitioner, Chris Polizzi ("Polizzi"), is a convicted prisoner incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana.[2] On August 19, 2003, Polizzi was charged by Bill of Information in Jefferson Parish with one count of sexual intercourse using force of arms with a known juvenile without her consent and by use of force or threats of physical violence, and one

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

count of oral sexual battery upon the known juvenile by touching her genitals with his mouth while the juvenile was less that 15 years old and at least three years younger than the defendant.[3] Polizzi entered a plea of not guilty to the charges on August 20, 2003.[4]

The record reflects that, in June of 2003, the victim, A.R., was 14 years old and lived at 769 Avenue C in Westwego, Louisiana.[5] On June 18, 2003, she spent the night at the house next door, 765 Avenue C, where Michelle Gisclair, Timmy Adams, and Melissa and David Trepagnier lived. Chris Polizzi, who was 59 years old at the time of trial, also had been staying in that house. The house was a shotgun-style house, with a living room, followed by a bedroom, followed by either a bathroom or another bedroom, with the kitchen in the very back. There was a doorway, with no door, separating the front bedroom from the living room.

A.R. later told Jefferson Parish Sheriff's Deputies that, on that night, she visited her neighbors, Gisclair and Adams. After playing darts, A.R. went to sleep on the sofa in the front room. At approximately 11:00 p.m., Polizzi, who was sleeping on a mattress on the floor in that same room, woke her up and told her to wash herself. She went to the bathroom and, upon returning, she saw Polizzi kneeling on the mattress wearing nothing but a condom on his penis. A.R. said that she lay down on the sofa, but Polizzi picked her up and brought her to the mattress. He touched her all over and removed her clothing. A.R. told Polizzi to stop, but he refused, and then had vaginal intercourse with her. Polizzi then turned her over and inserted his penis into her rectum,

---

[3]St. Rec. Vol. 1 of 6, Bill of Information, 8/19/03.

[4]St. Rec. Vol. 1 of 6, Minute Entry, 8/20/03.

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Polizzi*, 924 So.2d 303, 306-09 (La. App. 5th Cir. 2006); St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 05-KA-478, pp. 3-8, 2/14/06. Under Louisiana law, the victim and her family are identified by initials in order to protect her identity. See La. Rev. Stat. Ann. § 46:1844(W)(3).

but stopped when she said it hurt.  Then, he started vaginal intercourse again, and then performed oral sex on her.  When he was finished, A.R. went back to sleep on the sofa.  She said that the incident lasted approximately three hours.

The next morning, June 19, 2003, A.R. showered and then went fishing with Gisclair, Adams, and Melissa and David Trepagnier.  While fishing, A.R. told Melissa what had happened the night before.  The adults then brought the victim home and told A.R.'s mother.

Officer Terry Fourcade of the Westwego Police Department went to A.R.'s house in response to the reported rape.  A.R. was sitting on a couch between a woman and a man, whom Officer Fourcade assumed were the parents.  A.R. was crying and both adults were doing most of the talking.  The adults told Officer Fourcade that A.R. had told them that Polizzi had sexually assaulted her the night before while she was at 765 Avenue C.  A.R. confirmed that this is what had happened.  Officer Fourcade immediately notified his supervisor of the situation.

Officer Fourcade went next door and saw Polizzi outside smoking a cigarette.  Polizzi was in the process of placing bags of clothing into his car.  Polizzi told Officer Fourcade that he was leaving.  The Officer told Polizzi that he was under investigation and placed him in the rear of the police unit.

Shortly thereafter, Detective Edward Beyerback arrived and interviewed A.R., after which he and Officer Fourcade went next door, took photographs and collected evidence.  Detective Beyerback also interviewed David Trepagnier, who said that he and his wife were sleeping in the bedroom next to the living room.  He heard a noise during the night, but thought it was his infant son moving about in the bed, which was next to their bed.  When he looked at his son, the child was sleeping soundly.  David went back to sleep, and his wife did not waken.

Detective Beyerback transported Polizzi to the sheriff's office. During booking, a knife blade disguised as a belt buckle was found on his person. Polizzi refused to give a statement. He would later contend at trial that he was drunk and could not remember anything after he passed out that night.

The Detective also had A.R. and her mother meet him at his office where he took a recorded interview with A.R. Thereafter, A.R. and her mother went to Children's Hospital, where she was seen in the emergency room by Dr. Maria Treme, a pediatrician. A.R. told Dr. Treme what happened to her. Dr. Treme performed an examination and prepared a rape kit where she swabbed the victim's internal and external genitals. Dr. Treme found the genital examination to be normal, and she found no visible injuries on A.R.'s body. According to Dr. Treme, A.R. seemed numb and sad. A.R. also told Dr. Treme that a family friend, Allen LeBlanc, had abused her at different times between the ages nine and twelve.

The rape kit was later tested by Pam Williams, a forensic scientist in the Jefferson Parish Sheriff's Office, and no seminal fluid was detected. The samples were then sent to ReliaGene, a private DNA testing facility. Gina Pineda, an expert forensic DNA analyst at ReliaGene, compared the DNA profile of the male donor in the genital swab with the DNA profile taken from Polizzi. Pineda concluded that the two profiles were consistent with each other showing that Polizzi was the donor of both.

A.R. also was interviewed by Omalee Gordon on June 23, 2003 at the Jefferson Parish Children's Advocacy Center, and the interview was videotaped. The videotaped interview was very similar to A.R.'s account of the events given to Detective Beyerback except that A.R. mentioned that after Polizzi had sex with her, he removed the condom and wanted her to suck his "private." A.R.

said that she refused. A.R. also said that Polizzi had touched her twice on her "bottom part" at a lake in Mississippi when she went swimming with him, Gisclair, and Adams about one month before this incident.

On July 1, 2003, A.R. was also examined and interviewed by Dr. Ellie Wetsman, an expert in the field of child sexual abuse and pediatrics, at the Child Care Center at Children's Hospital. A.R. related what happened to her and the interview with Dr. Wetsman was recorded. A.R. was taking Paxil at the time, and she had previously attempted suicide four times.

A.R. repeatedly indicated that she was afraid of Polizzi and that she believed he would hurt her if she had said "no" or if she had fought with him, because he looked like a mean person. A.R. also knew that he always wore a knife that was connected to his pocket. He did not threaten her or show her the knife, and she did not know if he was wearing the knife that night.

Polizzi was tried before a jury on December 15, and 16, 2004, and was found guilty of forcible rape, a lesser included offense on count one, and guilty as charged on count two of oral sexual battery.[6] The Court sentenced Polizzi on January 6, 2005, to serve concurrent sentences of twenty-five (25) years in prison at hard labor for forcible rape and ten (10) years in prison at hard labor for oral sexual battery.[7] That same day, the State filed a multiple offender bill charging Polizzi as a second felony offender.[8] At a later hearing before the Trial Court on February 9, 2006, Polizzi

---

[6]St. Rec. Vol. 1 of 6, Trial Minutes, 12/15/04; Trial Minutes, 12/16/04; Jury Verdict (Count One), 12/16/04; Jury Verdict (Count Two), 12/16/04; Hearing Transcript, 12/15/04; Trial Transcript, 12/16/04; St. Rec. Vol. 2 of 6, Trial Transcript (continued), 12/16/04.

[7]St. Rec. Vol. 1 of 6, Sentencing Minutes, 1/6/05; St. Rec. Vol. 2 of 6, Sentencing Transcript, 1/6/05.

[8]St. Rec. Vol. 1 of 6, Multiple Bill, 1/6/05; Minute Entry, 1/6/05.

was held in contempt by the Trial Court and sentenced to six months "flat time" in the Jefferson Parish Prison for disruption of court proceedings.[9]

On direct appeal, Polizzi's appointed counsel filed a brief raising errors on the grounds of insufficient evidence to support the verdicts and excessive sentence.[10] The Louisiana Fifth Circuit affirmed Polizzi's convictions and the original sentences on February 14, 2006, finding no merit in either claim.[11] The Court also remanded the matter for the Trial Court to notify Polizzi of the delays for seeking post-conviction relief and to provide Polizzi with written notice of the sex offender registration requirements. The Trial Court complied on March 15, 2006.[12]

On March 14, 2006, Polizzi submitted a timely writ application to the Louisiana Supreme Court.[13] In that application, he indicated his intent to present claims to the Court for review and that he needed additional time to present the claims. The record does not contain a written presentation of any claims for that Court's review, although he did attach a copy of the Louisiana Fifth Circuit's opinion to his pleading.

While that writ application was pending in the Louisiana Supreme Court, the Trial Court held a hearing on the multiple bill on April 11, 2006.[14] Polizzi's counsel withdrew the motion to quash the multiple bill, and Polizzi entered a plea of guilty to the multiple bill. The Trial Court

---

[9]St. Rec. Vol. 4 of 6, Minute Entry, 2/9/06.

[10]St. Rec. Vol. 2 of 6, Appeal Brief, 05-KA-0478, 5/31/05. Although Polizzi was granted leave to file a supplemental brief, he did not do so.

[11]*State v. Polizzi*, 924 So.2d at 303; St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 05-KA-478, 2/14/06.

[12]St. Rec. Vol. 4 of 6, Notice of Prescriptive Period, 3/15/06.

[13]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 06-KO-1052 (postmarked 3/14/06); La. S. Ct. Letter, 2006-KO-1052, 5/08/06 (showing postmark 3/14/06).

[14]St. Rec. Vol. 4 of 6, Multiple Bill Sentencing Minutes, 4/11/06; Waiver of Rights, Plea of Guilty Multiple Offender, 4/11/06; Motion to Quash, 7/7/05.

resentenced Polizzi as a second offender on Count One, forcible rape, to serve twenty-five (25) years in prison without benefit of parole, probation, or suspension of sentence.[15]  Polizzi did not seek review of this adjudication or sentence.[16]

Thereafter, on November 3, 2006, the Louisiana Supreme Court denied Polizzi's pending writ application without stated reasons.[17]  Polizzi's conviction became final 90 days later, on February 1, 2007, when he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S.Ct. Rule 13(1).

## II.  **State Post-Conviction Background**

On November 14, 2006, Polizzi submitted an application for post-conviction relief to the Trial Court asserting that his counsel provided ineffective assistance when counsel:[18] (1) failed to object to the denial of the defense's motion for mistrial; (2) failed to object to an officer's admission that he tampered with evidence; (3) failed to move for a mistrial when the police report was delivered the night before trial; (4) failed to object to the chain of evidence; (5) failed to object to expert's hearsay testimony about tests she did not personally conduct; (6) failed to request independent analysis of the DNA evidence; (7) failed to object to hearsay testimony of Milton

---

[15]St. Rec. Vol. 4 of 6, Multiple Bill Sentencing Minutes.

[16]The record indicates that, on August 8, 2006, the Louisiana Supreme Court Central Staff notified Polizzi that a writ application that had been received from him in June of 2006, had been "inadvertently discarded," and he was asked to resubmit the writ. The contents of the writ are unknown and Polizza did not file any other writ application or pleadings with the Louisiana Supreme Court within that time period or thereafter until October of 2007 in connection with his post-conviction review.

[17]*State v. Polizzi*, 924 So.2d 303 (La. 2006); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2006-KO-1052, 11/3/06.

[18]St. Rec. Vol. 4 of 6, Application for Post-Conviction Relief, 11/20/06 (dated 11/14/06).

Dureau; (8) failed to object to the Trial Judge's comments made in front of the jury; (9) failed to prevail on his objection to the presentation of Polizzi's buckle knife; (10) failed to object to the jury instructions; (11) failed to file a motion to suppress the videotaped statement; (12) failed to call an expert to discuss the medication taken by the victim; (13) erroneously questioned the petitioner about his prior criminal activity; (14) failed to object to the prosecutor's prejudicial remarks; and (15) failed to conduct and adequate pretrial investigation.  Polizzi also filed a supplement brief and a memorandum in support of the application, in which he included additional argument and several edits he wished to incorporate into his original pleading.[19]

After receiving a response from the State, the Trial Court denied the application as supplemented on April 19, 2007, finding that Polizzi failed to establish his entitlement to relief under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and related state case law.[20]

Almost two months later, on June 11, 2007, Polizzi filed a writ application with the Louisiana Fifth Circuit arguing that the Trial Court erred in denying his post-conviction application without an evidentiary hearing.[21]  On October 1, 2007, the Louisiana Fifth Circuit denied the writ application finding Polizzi's claims of violation of discovery rules were not properly raised on post-conviction review.  The Court also declined to review Polizzi's insufficient evidence claim, because

---

[19]St. Rec. Vol. 4 of 6, Supplemental Brief, dated 2/21/07; Memorandum in Support, 2/26/07.

[20]St. Rec. Vol. 4 of 6, Trial Court Order, 4/19/07; State's Response, 4/13/06.

[21]The record does not contain a copy of this writ application.  The Court's order provides the filing date of the application.  St. Rec. Vol. 6 of 6, 5th Cir. Order, 07-KH-413, 10/1/07.  The record indicates that Polizzi also submitted an application for writ of mandamus to the Louisiana Fifth Circuit on or about June 7, 2007, which was denied on June 28, 2007, because the Trial Court had already ruled.  St. Rec. Vol. 6 of 6, 5th Cir. Order, 07-KH-393, 6/28/07.

that claim was fully reviewed on direct appeal. As for the ineffective assistance of counsel claims, the Court found no error in the Trial Court's denial of relief without a hearing.[22]

The record indicates that, on October 5, 2007, Polizzi submitted a "letter" of an unknown nature to the Louisiana Supreme Court.[23] By letter dated November 7, 2007, he was advised by the Louisiana Supreme Court Central Staff that his "letter" was not in a procedurally proper form for the Court to consider and it was returned to him unfiled.[24]

On November 13, 2007, Polizzi submitted a writ application to the Louisiana Supreme Court arguing the lower courts erred in denying his application for post-conviction relief on procedural grounds and without an evidentiary hearing.[25] The Louisiana Supreme Court denied the application without stated reasons on September 19, 2008.[26]

In the meantime, on July 24, 2008, Polizzi submitted a writ application to the Louisiana Supreme Court seeking review of his previously filed post-conviction writ applications pursuant to *State v. Cordero*, 993 So.2d 203 (La. 2008).[27] The Court denied the application on January 30, 2009, finding that Polizzi failed to establish that he filed a *pro se* writ application during the period so as

---

[22]St. Rec. Vol. 6 of 6, 5th Cir. Order, 07-KH-413, 10/1/07.

[23]St. Rec. Vol. 6 of 6, Central Staff Letter, 11/7/07.

[24]*Id.*

[25]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 07-KH-2397, 12/12/07 (postmarked 11/13/07); St. Rec. Vol. 5 of 6, La. S. Ct. Letter, 2007-KH-2397, 12/12/07 (showing postal meter of 11/13/07). The Court rejects any notion that this pleading was submitted to the Court on July 9, 2007, the date indicated next to Polizzi's signature. The appellate court's order was not issued until October 1, 2007.

[26]*State ex rel. Polizzi v. State*, 992 So.2d 946 (La. 2008); St. Rec. Vol. 6 of 6, 2007-KH-2397, 9/19/08.

[27]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 08-KH-2066, 8/21/08 (dated 7/24/08); St. Rec. Vol. 5 of 6, La. S. Ct. Letter, 2008-KH-2066, 8/21/08 (showing postal meter 7/29/08). In *Cordero*, the court addressed accusations that, during a certain period, the Louisiana Fifth Circuit issued summary dismissals without judicial review of *pro se* post-conviction writ applications.

to entitle him to relief under *Cordero*.[28]  The Court denied Polizzi's request for reconsideration on April 17, 2009.[29]

Polizzi submitted another application for post-conviction relief to the Trial Court on November 15, 2011 raising claims of ineffective assistance of counsel and prosecutorial misconduct.[30]  The Trial Court denied the application on January 9, 2012, as untimely filed under La. Code Crim. P. art. 930.8 and as repetitive and successive under La. Code Crim. P. art. 930.4(B)-(E).[31]  The Court also denied Polizzi's motion to reconsider on February 8, 2012, and granted Polizzi until March 12, 2012 to file for review.[32]

The Louisiana Fifth Circuit denied Polizzi's subsequent writ application on April 10, 2012, finding no error in the Trial Court's reliance on La. Code Crim. P. arts. 930.8 and 930.4 to deny him relief.[33]  The Court noted without specificity that any other claims listed by Polizzi were not brief and were waived.  The Louisiana Supreme Court also denied Polizzi's related writ application on September 14, 2012, citing La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995).[34]

---

[28]*State ex rel. Polizzi v. State*, 999 So.2d 751 (La. 2009); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2008-KH-2066, 1/30/09.

[29]*State ex rel. Polizzi v. State*, 6 So.3d 1274 (La. 2009); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2008-KH-2066, 4/17/09; St. Rec. Vol. 6 of 6, Petition for Reconsideration, 4/1/09 (postal metered 2/11/09, dated 2/4/09).

[30]St. Rec. Vol. 3 of 6, Application for Post-Conviction Relief, 11/22/11 (dated 11/15/11).

[31]St. Rec. Vol. 3 of 6, Trial Court Order, 1/9/12.

[32]St. Rec. Vol. 3 of 6, Trial Court Order, 2/8/12; Notice of Intent or Motion to Reconsider, 1/31/12 (dated 1/25/12); Supplement to Motion, 2/1/12.

[33]St. Rec. Vol. 6 of 6, 5th Cir. Order, 12-KH-201, 4/10/12.  The writ application is not in the record.

[34]*State ex rel. Polizzi v. State*, 97 So.3d 384 (La. 2012); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2012-KH-0981, 9/14/12; La. S. Ct. Writ Application, 12-KH-981, 5/1/12 (postal meter 4/26/12).

**III.	Prior Federal Petition**

On June 10, 2009, Polizzi submitted to this Court his first petition for federal habeas corpus relief, Civ. Action No. 09-3972"J"(4), in which he raised three grounds for relief:[35] (1) the evidence was insufficient to support the conviction; (2) the trial court imposed an illegally excessive sentence; and (3) his counsel provided ineffective assistance. The undersigned Magistrate Judge issued a Report and Recommendation on February 15, 2011, recommending dismissal of Polizzi's mixed petition for failure to exhaust state court remedies as to each of his claims finding that the claims had not been specifically raised in the Louisiana Supreme Court.[36] On March 1, 2011, the District Court overruled Polizzi's objections and entered an Order and Judgment dismissing the petition without prejudice for failure to exhaust.[37] The United States Fifth Circuit denied issuance of a certificate of appealability on September 27, 2011.[38]

**IV.	Current Federal Petition**

On November 13, 2012, the clerk of this Court filed Polizzi's current petition for federal habeas corpus relief, in which he raised the following grounds for relief:[39] (1) counsel was ineffective when he failed to challenge the State's decision to hire a second DNA expert after the first test was negative; (2) evidence was insufficient to support the conviction because he is innocent; and (3) the trial court imposed an excessive sentence.

---

[35]Civ. Action No. 09-3972"J"(4), Rec. Doc. No. 1.

[36]*Id.*, Rec. Doc. No. 16.

[37]*Id.*, Rec. Doc. Nos. 18, 19.

[38]*Id.*, Rec. Doc. No. 27 (Appeal No. 11-30326).

[39]Rec. Doc. No. 3.

The State filed a memorandum in opposition arguing that Polizzi's petition was not timely filed. Polizzi replied to the State's opposition urging the Court to consider the merits of his claims.

## V.  **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[40] applies to this petition, which is deemed filed in this court under the federal mailbox rule on October 28, 2012.[41] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)); *see also Day v. McDonough*, 547 U.S. 198, 205 (2006) (recognizing the AEDPA's statute of limitations as a threshold determination).

The State argues that Polizzi's federal petition was not timely filed. For the following reasons, the Court finds that the petition was not timely filed and should be dismissed for that reason.

---

[40] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[41] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Polizzi's federal habeas petition on November 13, 2012, when the filing fee was received after denial of pauper status. Polizzi signed the cover letter submitted with his form petition and memorandum in support on October 28, 2012. This is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 376).

## VI. Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[42] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). As calculated previously, Polizzi's convictions and sentences were final on February 1, 2007. Under the plain language of § 2244, Polizzi had one year, or until February 1, 2008, to file a timely federal application for habeas corpus relief which he did not do. Thus, literal application of the statute would bar Polizzi's § 2254 petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

### A. Statutory Tolling

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such

---

[42]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
- A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
- B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
- C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
- D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999) (Table). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. 214 (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In the instant case, the AEDPA filing period was to begin running on February 2, 2007, the day after Polizzi's convictions became final. At the time, however, Polizzi already had his first application for post-conviction review pending in the state trial court. The period remained tolled until May 21, 2007, when the Trial Court's order became final and he did not timely seek review. The first 20 days of the filing period ran until June 11, 2007 when Polizzi presented his writ application to the Louisiana Fifth Circuit. It remained tolled until October 31, 2007, when Polizzi failed to file a procedurally proper or timely writ application with the Louisiana Supreme Court seeking review of the appellate court's October 1, 2007 order.

The filing period began to run again on November 1, 2007, and did so for 265 days, until July 24, 2008, when Polizzi submitted a writ application to the Louisiana Supreme Court under *Cordero*. That writ remained pending until April 17, 2009, when the Louisiana Supreme Court denied his request for reconsideration.

The AEDPA one-year filing period started to run again on April 18, 2009 and did so for the remaining 80 days, until July 6, 2009, when it expired. Polizzi did not have any properly filed state application for post-conviction or other collateral review pending during that period of time.

The Court is aware of two other filings made by Polizzi prior to that date which do not provide him with any additional statutory tolling. First, on November 13, 2007, Polizzi submitted for filing an untimely writ application to the Louisiana Supreme Court. Pursuant to La. S.Ct. Rule X § 5, an application seeking review of a judgment by the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment under review or from denial of a timely filed application for rehearing. *Accord Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009). As outlined above, Polizzi submitted this writ application for filing in the Louisiana Supreme Court on

15

November 13, 2007. This was not within the 30-day time limit allowed in La. S. Ct. Rule X § 5. A writ application which fails to comply with La. S. Ct. Rule X § 5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler v. Cain*, 533 F.3d 314, 318-319 (2008); *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed); *Wardlaw v. Cain*, 541 F.3d 275, 279 (5th Cir. 2008) (same). Polizzi's 2007 Louisiana Supreme Court writ application did not interrupt or toll the AEDPA filing period, which expired on July 6, 2009, as calculated above.

Second, during the time prior to expiration of the filing period, on June 10, 2009, Polizzi submitted for filing his first federal petition for habeas corpus relief.[43] This prior federal habeas petition was not an application for state post-conviction or other collateral review and does not fall under the provisions of § 2244(d)(2). *Duncan*, 533 U.S. at 181-82; *Grooms v. Johnson*, 208 F.3d 488, 489 (5th Cir. 1999). Polizzi is not entitled to statutory tolling for the time his first federal petition was pending or for the pendency of his appeal thereafter. *Id.*, 533 U.S. at 182; *Grooms*, 208 F.3d at 489.

As a result, in addition to the sporadic pockets of time defined above, Polizzi allowed 940 days to pass between the Louisiana Supreme Court's denial of the reconsideration of his *Cordero* writ on April 17, 2009, and the submission for filing of his repetitive state application for post-conviction relief on November 15, 2011. Within that period, the one-year AEDPA filing period expired on July 6, 2009, as calculated above.

---

[43]In that petition, Polizzi did not specify any particular grounds in support of his ineffective assistance of counsel claim. Later, in his traverse to the State's opposition, he mentioned that the State should not have been allowed to test the DNA samples twice and that counsel was ineffective, but he did not supplement the petition itself. Civ. Action No. 09-3972"J"(4), Rec. Doc. No. 11.

16

### B.     No Basis for Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, __ U.S. __, 130 S. Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) ("A garden variety claim of excusable neglect does not support equitable tolling.") (quotation omitted); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-

day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Polizzi has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling under the § 2244(d) computation. The record does not contain any of the extraordinary circumstances previously recognized by the precedent cited above. Had Polizzi diligently pursued the full-extent of his state court remedies in a timely manner, he could have better preserved the federal filing period. The record instead reflects that he engaged in piecemeal presentation of his issues and incomplete pursuit of relief in both the state and federal courts. There is no basis for equitable tolling in this record.

In addition, the Court recognizes that Polizzi offers the conclusory suggestion of his actual innocence as a basis for overcoming the untimeliness of his federal petition and its dismissal without review of the merits of his claims. Recently, in *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924 (2013), the United States Supreme Court held "that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *Id*. at 1928. In recognizing the stringent standards of this exception to § 2244(d), the Court held that "[t]o invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that

no reasonable juror would have convicted him in the light of the new evidence.'" *Id*. at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

In this case, Polizzi has offered no new evidence of his factual innocence, much less any evidence that would undermine the verdict reached by the jury in his case or lead the Court to question whether a reasonable jury would not question his guilt. *Accord*, *Golmon v. Director, TDJC-CID*, No. 13CV325, 2013 WL 3724838, at *1 (E.D. Tex. Jul. 15, 2013). Polizzi simply offers the same unsupported claim of innocence that was presented as part of his defense at trial, i.e. he did not remember having sex with A.R., a claim already considered by the jury at his trial and by the state courts when examining his claim of insufficient evidence. Polizzi falls far short of meeting the threshold level of proof required to invoke an actual innocence or miscarriage of justice exception to the AEDPA's statute of limitation. *See Golmon*, 2013 WL 3724838 at *1 (petitioner's failure to present any evidence of innocence was insufficient to invoke exception); *Sullivan v. Walker*, No. 12-CV-833, 2013 WL 2465366, at *3 (N. D. Tex. Jun. 14, 2013) (same).

Polizzi's federal petition is deemed filed in this Court on October 28, 2012, which was over three years after the AEDPA filing period expired on July 6, 2009. His petition should be dismissed as time-barred.

## VII. Recommendation

It is therefore **RECOMMENDED** that Chris Polizzi's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time- barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[44]

New Orleans, Louisiana, this 21st day of August, 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[44]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.